Andrew Welch *v*. Thomas Spencer.

---

# SUPREME COURT—IN BANCO.

## JANUARY TERM—1881.

*Harris, C. J., Judd and McCully, J.J.*

---

## ANDREW WELCH *vs.* THOMAS SPENCER.

---

### ON EXCEPTIONS.

THE PLAINTIFF sought to recover $19,800, being amount of principal and interest claimed due on two promissory notes made by defendant dated October 1, 1872. An agreement was executed by the defendant bearing date February 17, 1875, which was delivered to the plaintiff's agents and acted upon, but never signed by them, by which the amount due on said notes was reduced to $5,000, with interest at 4 per cent.

Andrew Welch *v.* Thomas Spencer.

In 1877 the plaintiff repudiated this agreement upon the ground that it had not been signed by his agents. The defendant in his rejoinder averred that the agreement of February 17, 1875, was never executed and delivered, and that the plaintiff never became a party to it, and that, therefore, the Statute of Limitations had barred the recovery. Another agreement bearing date September 11, 1877, was executed by the plaintiff and nominally by the defendant through his agents, Green, Macfarlane & Co. By this latter agreement it is provided that the interest on said indebtedness of $10,000, and another indebtedness of $15,000, to Williams, Blanchard & Co., shall be waived, and interest shall be charged on the whole at 4 per cent. This last agreement was executed under power of attorney bearing date August 30, 1877, whereby defendant constitutes the firm of Green, Macfarlane & Co. his true and lawful attorneys to transact all business appertaining to his plantation. It was executed under pressure of a threat by plaintiff that he would put defendant into bankruptcy ;

HELD, that the agreement of February 17, 1875, on the evidence under the pleadings, was to be treated as a nullity, and that the agreement of September 11, 1877, being favorable to defendant, was properly executed under the power of attorney, and the verdict of the jury cannot be disturbed.

Opinion of the Court by JUDD, J.

At the January Term of this Court, 1881, the plaintiff Andrew Welch, who is a commission merchant in San Francisco, doing business as Welch & Co., brought his action against the defendant Thomas Spencer, who is a sugar planter of Hilo, Hawaii, to recover the sum of nineteen thousand eight hundred dollars, being the amount of principal and interest on two promissory notes, each for five thousand dollars, dated at Hilo, October 1, 1872, payable one in sixteen months, and the other in two years, with interest at one per cent. per month, to the order of Messrs. Walker & Allen, and expressed to be for indebtedness as per mortgage dated July 1, 1871, given to Walker & Allen. The notes were endorsed by Messrs. Walker & Allen, and were secured by an assignment by them of the mortgage referred to to the plaintiff. The defendant plead the general issue and the Statute of Limitations.

To this the plaintiff filed a replication, setting up that within

six years last past, to wit, in the years 1875, 1877, 1878 and 1879, defendant had paid to the plaintiff on account of the notes various sums amounting to $3,141.41, and also that by an indenture made within six years past, to wit, on the 17th of February, 1875, the defendant acknowledged such indebtedness and promised to pay the same; and also by an indenture dated the 11th of September, 1877. And further, that the notes declared on are secured by a mortgage executed by the defendant, which mortgage was foreclosed and the premises conveyed were sold by order of the Court on the 2d of August, 1880, and that six years have not elapsed since the foreclosure.

An examination of the facts of this mortgage shows that many notes were secured by the mortgage, having priority in the order in which they were mentioned in the mortgage. Dr. J. S. McGrew held several of the notes which had priority of the notes held by the present plaintiff and he foreclosed the mortgage in May last, and on sale the premises did not realize sufficient to pay his claim.

A rejoinder was filed by the defendant to the effect that the payments alleged in the replication were not made on account of the notes; that the indenture of February 17, 1875, was never executed and delivered, and that the plaintiff never became a party to this indenture, and since its date repudiated it; that defendant was not a party to the indenture of the 11th of September, 1877, and that the decree of foreclosure is "*res inter alios acta*," and has no effect on the notes. The case went to trial, and the jury rendered a verdict for the plaintiff for the sum of $7,729.85.

The agreement of the 17th of February, 1875, in substance recites that the plaintiff holds two of defendant's notes, each for $5,000, dated October 1, 1872, and which were then with all the accrued interest due and payable, and the plaintiff agreed to reduce the indebtedness by one-half of the principal and all the accrued interest, and that the remaining sum of $5,000 and interest at the rate of one per cent. a year should

Andrew Welch *v.* Thomas Spencer.

be paid by commissions on sugar to be consigned by the said defendant or his agents to the plaintiff, at the rate of four per cent., in consideration of the defendant's agreeing that two-fifths of all sugars by the defendant or his agents consigned or caused to be consigned to San Francisco for sale, should be consigned to plaintiff for sale on the terms hereinbefore named, until the said net commissions should amount to all of the remaining indebtedness. And the reduction of the debt was made conditioned on the consigning of the sugar to the plaintiff as set forth, and that so long as defendant should carry on the plantation and consign sugars as aforesaid, no enforcement of this debt should be made by plaintiff.

It appears by the evidence of Mr. George Macfarlane that the firm of Green, Macfarlane & Co. were agents of the defendant, succeeding Theo. H. Davies. That Mr. Davies and also the firm of Green, Macfarlane & Co. shipped sugars to the plaintiff under the agreement of the 17th of February, 1875, the net commissions on which as appeared by a memorandum furnished by plaintiff amounted to $3,141.41, and the witness said that he continued to ship cargoes to plaintiff until the foreclosure of the mortgage on defendant's plantation in August, 1880, and that the commissions on the sugars consigned in 1880 were $428.21. Also that this agreement was signed by Mr. Spencer and passed to Brewer & Co., who were Welch's agents, for signature, and they acted under it. That in 1877 Mr. Welch, while in Honolulu, said to witness that as his agents had not signed Spencer's agreement he was not bound by it, and he would repudiate it. "Welch called on Mr. Green and myself and complained that we had shipped some sugars to Portland, and that we had no business to do so. We took a different view of it. We looked for our copy of the agreement and could not find it, and Mr. Welch said his copy was over at Brewer's, and upon going for it he discovered that it had never been signed, and then he said it was no agreement. He then called with agreement (marked

H, dated the 11th of September, 1877) restoring the claim to its original amount, and said, 'Sign that agreement,' and I declined to sign it." While the witness was gone to seek legal advice Mr. Green signed the agreement under pressure of a threat by Welch that he would put Mr. Spencer into bankruptcy unless he signed it. Mr. Green said if he did not sign it, it would jeopardize their advances on the plantation.

The power of attorney under which Mr. Green acted when he signed the agreement is dated 30th of August, 1877, and by it Mr. Spencer constitutes the firm of Green, Macfarlane & Co. " my true and lawful attorneys for me in my name to transact all business appertaining to the T. Spencer's plantation, Amauulu, Hilo, Hawaii." This last agreement dated 11th of September, 1877, in substance recites that Welch, holding the notes of Spencer amounting to $10,000, which were due and unpaid, agrees to waive the accrued interest, and take new notes for the same sum with interest at four per cent. per annum, payable annually. Five per cent. commission was to be charged on sugar consigned to Welch for sale, and of this one per cent. was to be paid to Spencer's agents, and Spencer was to send not less than fifty per cent. of each crop to San Francisco, of which two-fifths were to be consigned to Welch.

The defendant excepted to the instructions given to the jury at the plaintiff's request—first, that the defendant is bound by the agreement on file signed by Green, Macfarlane & Co., and that the notes are by that document taken out of the Statute of Limitations; and second, to the following instructions given to the jury: "It appears on the occasion of signing the second agreement that Mr. Welch was in Honolulu, and claimed that by the agreement of 17th of February, 1875, Spencer was bound to ship all his sugars to San Francisco. Now, it is apparent that if such had been the course of business before, Welch would have just cause to complain if any considerable proportion of the sugar was shipped to other places, and thus taken out of the effect of this agree-.

ment, since it is apparent to all business men that the claim set up by the defendant would enable him, by adhering to the letter of the agreement, to send the larger part of his sugars to another market, which would be a fraud upon Welch. Mr. Welch went for his 'part' of the contract to his agent's office, and found it had not been signed by him or his agents, and on his return to Messrs. Green, Macfarlane & Co.'s office set up this as a new reason why he should not be bound by the contract. This reason would probably have been futile, since if they had not signed it, they had acted under and treated it as though it was signed, and could have signed it at any time, having received it for the purpose of signing it and treating it as a bargain complete. However all this may be, Green and Welch stood on an equal footing in every respect, both as regards knowledge of the facts and liberty of contract. Welch used his utmost endeavors to induce Green, as agent for Spencer, to enter into a new agreement, and in doing so threatened resort to the Courts, or in other words, to put Spencer into bankruptcy. This he had a right to do, and Green as Spencer's agent might heed or disregard his threats as he saw fit. As it was, Mr. Green, in the exercise of his best discretion, yielded to Mr. Welch, and having full power to do so from Spencer, entered into the second agreement, thereby cancelling and annulling the first. Now it being apparent that Green, Macfarlane & Co., as agents for Spencer, had authority to do so, Spencer as well as Welch was bound by the second agreement, and the notes took new life from that date, or in other words, the Statute of Limitations would begin to run from the date of that agreement."

The first question to be determined is whether the words in the power of attorney from Mr. Spencer to Green, Macfarlane & Co., "to transact all business appertaining to the T. Spencer's plantation," authorized Mr. Green to sign the second agreement.

It is urged that the effect of signing this second agreement—

if the authority to do so be conceded—was to annul the first agreement, which was highly favorable to Mr. Spencer, for it reduced his debt one-half. The new agreement substituted was more onerous to Mr. Spencer, for it restored the debt to its original amount. Although doubts may exist as to the authority of an agent, under a general power of attorney to transact business, to bind his principal to an agreement manifestly to his disadvantage, we are not at liberty to consider them under the peculiar circumstances of this case. The defendant's rejoinder avers that the indenture of February 17, 1875, was never made, executed or delivered, "and that the plaintiff never became a party to it, and at the time and since the date thereof he hath repudiated the same."

The defendant denied the execution and delivery of this first agreement, in order that it might not have the effect of taking the notes out of the operation of the Statute of Limitations as claimed by the plaintiff, and we cannot now consider it to have been in effect on the 11th of September, 1877, when the agreement of that date was signed.

This agreement, when considered with reference to Mr. Spencer's condition, the agreement of February 17, 1875, being treated as a nullity, was favorable to Mr. Spencer, for it rid him of his obligation to pay the accrued interest and reduced the interest to four per cent. per annum on this debt of $10,000, and one to Williams, Blanchard & Co. of $15,000, which were to be paid in annual installments of $5,000.

In this view the objections to the efficiency of the power of attorney fall to the ground, and, therefore, the charge of the Court, that Mr. Green had authority to make this agreement, was right. And the further charge of the Court that this agreement gave new life to the notes, it being made less than six years after the notes were given, was also correct.

That part of the remarks of the Court which is quoted in full above, is objected to as being in substance a charge that Spencer had failed to keep the first agreement. In review-

ing it carefully we do not find any such expression of opinion. The Court, indeed, said that "the claim set up by the defendant would enable him, by adhering to the letter of the agreement, to send the larger part or all the sugar to another market, which would be a fraud upon Welch." But this was upon a hypothetical case stated by the Court, that if the course of trade had been to ship all the sugar of Spencer to San Francisco, and after the agreement Spencer had shipped any considerable proportion to other places, Welch would have just cause to complain. This was a correct view of the contract, but the jury were not authorized to consider the question whether or not Spencer had broken the contract in this respect, for Spencer was endeavoring to maintain what he had plead, that the contract had never been made, and he cannot now take advantage of the observations of the Court with reference to the fulfillment of the contract which he insisted was a nullity.

The agreement of the 11th of September, 1877, was sufficient to take the notes out of the statute. Considering the pleadings and the exact issues raised by them for the jury to pass upon, we see no error in the charge of the Court.

Exceptions overruled.

Castle & Hatch for plaintiff.

J. M. Davidson for defendant, at the trial.

A. S. Hartwell for defendant, in exceptions.

Honolulu, February 21, 1881.